TIBBITTS, appellant, v. AH TONG, respondent.

MINERAL LANDS — *Disabilities of an alien — Effect of such land pass-ing into the possession of an alien — Possession and right of purchase inseparable.* — The exploration and purchase of the mineral lands of the United States are by law (see R. S. U. S. sec. 2319, p. 427) free only to citizens of the United States, or those who have declared their in-tention to become such. An alien can neither locate, possess, purchase or acquire title by patent to such mineral lands.

A possessory title of mineral land, founded on a valid location, and held by compliance with local mining laws, may be transferred from one to another, so long as it does not pass into the hands of one in-capable of acquiring complete title, in which latter case the grant reverts to government, and the land becomes subject to relocation.

The right of possession cannot be held by one incapable of holding by purchase from government, else the government might be deprived of its power to sell forever. Possession and the right and power to purchase are inseparable.

*Appeal from Second District, Deer Lodge County.*

WADE, C. J. The question presented by this appeal arises upon the following facts: On the 11th day of April, 1880, James McDonald and others, who were citizens, owned and held possession of certain placer mining claims, situate in the Pioneer Mining District, Deer Lodge county, under locations before that time duly made, and on that day, for a valuable consideration, sold and conveyed the same to the defendants, who are alien Chinamen, who went into the possession thereof under and by virtue of such sale, and have ever since possessed, worked and mined the same; and while they were so working and mining said ground, the plaintiffs, who are citizens, on the 9th day of April, 1881, duly located the same, and now claim to be the owners and entitled to the possession thereof. Hence the question: Are the plaintiffs entitled so to own and possess the ground by virtue of their location, notwithstanding the location by the defendants' grantors, and the purchase and possession of the defendants? In other words, Can an alien take and

hold the possessory title to an unpatented mining claim, which has been conveyed to him by a citizen, as against another citizen who has located and demands possession of the same; or does such conveyance have the effect to so restore the claim to the public domain as to authorize its location and possession by a citizen?

If this question were to be determined as at common law, its solution would be without difficulty. That law authorized an alien to purchase and hold real estate as against every one except the government; and the government could not divest him of his title or interest therein except upon inquest of office found, which was an inquiry by the king's officer or commissioners before a jury, concerning the king's title or right of possession to lands or tenements, goods or chattels. *Fairfax's Devisees* v. *Hunter's Lessee*, 7 Cranch, 619–20; *Gouvernier's Heirs* v. *Robertson*, 11 Wheat. 348; *Elmendorff's* v. *Carmichael*, 3 Litt. (Ky.) 472; Same Case, reported in 14 Am. Decisions, 86, and note; 2 Bouv. Law Dic. title "Inquest of Office."

The doctrine of the common law, however, is inapplicable, since the question must be determined by an interpretation of the act of congress opening the mineral lands of the United States to exploration, occupation and purchase. That act provides: "All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States." R. S. sec. 2319, p. 427.

We have upon several occasions held that a location under this section of the law carries with it the grant of

an easement from the government to the person making the location, in the ground located. *Robertson* v. *Smith,* 1 Mont. 414; *Belk* v. *Meagher et al.* 3 Mont. 79. The easement so granted by virtue of a location in pursuance of the law is the right to the possession, and the right to purchase when the law has been fully complied with. The location is the foundation of the possessory title, and possession under it, as required by the law and the local rules and customs, keeps the title alive. The government holds the superior title in trust for the person so holding the possessory title until, by complying with the law, he may acquire the full title.

But this easement or grant to the locator cannot be severed or divided. Being made up of the right to the possession and the right to purchase, if the right to the possession fails, the right to purchase is gone, and if the right to purchase is defeated, the right to the possession cannot be maintained. So, therefore, the person making the location and his grantees, who only succeed to his rights, must have the capacity both to possess and to purchase; otherwise the grant of the government becomes divested and the ground again open to location. There cannot be such a location under the law as entitles the locator or his assignees to the possession without the right to purchase, nor to purchase without the right of possession. Possession and the right to purchase go together. They are parts of the same grant, which is a unity, and which becomes vested by the act of location. Therefore the right to the possession cannot be transferred to any person who is incapable of causing his possessory right or title to ripen into a full title by purchasing from the government. Such a person could not so occupy and possess; he could not so comply with the law and the local rules and customs as to preserve his right to the possession, because such right can only be kept alive by being linked to the right to purchase. Possession under a location is preliminary to a purchase, and can only be

of that character. It is one step in the process by which the government parts with its title to the purchaser. And so he who takes possession under a location, or he to whom such possession is transferred, must be capable of becoming a purchaser from the government, for such possession is part of the purchase. If, therefore, possession is transferred to one who, under the statute, is incapable of becoming a purchaser from the government, such possession being part and parcel of the purchase, is illegal, and such transfer of possession is equivalent to abandonment, and opens the ground to location and possession by any one capable of making and holding the same.

The term "occupation," as used in the statute, is equivalent to possession. The right to occupy is the right to possess and to hold. The right to locate is included in the right to occupy, and incident to a location is the right of possession. But the right of occupation and purchase is limited to citizens and to those who have declared their intention to become such. Therefore an alien cannot occupy or possess under this grant from the government. If he cannot take by purchase, he cannot hold by possession, for they both require the same capacity and are parts of the same right. If he cannot occupy so as to become a purchaser, he cannot so as to hold the possessory title.

The locator of a mining claim is the assignee of the United States so long as he complies with the conditions imposed by the law. And this relation must be kept up when the claim is transferred. He to whom the possessory title is assigned is always the assignee of the United States. Hence he must be such a person as may sustain that relation, and hence such a person as might establish the relation in the first instance; in other words, such a person as might make a location. The argument that a location is a grant, and that, after a grant, the claim granted does not belong to the United States, and

therefore cannot be granted again, would be legitimate
and forcible, were it not for the fact that the grant which
is evidenced by a location must be kept in being by pos-
session, and, as we have already seen, this possession,
being preliminary to and one of the steps towards ac-
quiring title by purchase from the government, must be
by a person authorized to make such a purchase.

These views are not unsupported by authority. In
the case of *Chapman* v. *Toy Long*, it is held that "the
license contained in section 2319, *supra*, to explore, oc-
cupy and purchase any of the lands of the United States
containing mineral deposits, is confined to citizens of the
United States and to those who have declared their in-
tention to become such. The defendants, being aliens,
are not within the purview of the law, and, by an almost
necessary implication, are prohibited from the exercise
of the rights conferred by it." 4 Sawyer, 28.

In the case of *The Golden Fleece Co.* v. *The Cable Con.
Co.* 12 Nev. 322, the court holds as follows: "As to the first
point, it is clear that an alien who has never declared his
intention to become a citizen is not a qualified locator of
mining ground, and he cannot hold a mining claim, either
by actual possession or by location, against one who con-
nects himself with the government title by compliance
with the mining law."

The case of *The Territory* v. *Lee*, 2 Mont. 124, is re-
ferred to as an authority in favor of respondents. That
case involved the validity of an act of the legislature en-
titled "An act to provide for the forfeiture to the terri-
tory of placer mines held by aliens," and it was held that
the territory had no interest in claims held by aliens or
others, and no title thereto, but that by the operation of
this act of the legislature, the territory became the owner
of the possessory title to such claims and authorized to
sell the same for its own use; so that by the force of this
statute, it became the owner of property in which it
never had any interest, and which never belonged to it,

thereby forfeiting the property of an alien to itself, while, if any forfeiture should have taken place, the property forfeited would necessarily belong to the United States. Hence the act was declared a nullity. The question as to the right of an alien to purchase from a citizen who owned the possessory title to a mining claim was not in the case, and if, incidentally, the decision touched upon the rights of aliens to hold real estate, their rights at common law were referred to, and not their rights under the act of congress in question. And we say again that if any forfeiture of the possessory title to a mining claim, for any reason, takes place, the forfeiture is to the United States, who owns the paramount title, and after such forfeiture the claim becomes again subject to location.

The right of location upon the public mineral lands is a privilege granted by congress, but it can only be exercised by qualified persons. One of the elements of a location is possession. Possession is as essential to the grant as is the discovery of a mineral deposit or the marking and boundary of the claim. An alien cannot make a valid location. He may under a discovery identify the claim by proper boundaries and enter into possession, but the grant of the government does not attach to him; he is incapable of receiving it; and one of the reasons is, that he cannot so possess the claim as to call the grant into being and give it life. This kind of possession that goes with and forms a part of the location is necessary in order to keep the grant of government alive. And so if a person is not qualified to take possession in the first instance, he is not qualified to hold possession thereafter. The subsequent holding of possession must relate back to, and give character to the location. Therefore the possession of an alien under a valid location is equivalent to possession with no location at all, for the possession must at all times form a part of and support the location. The right to the possession comes only from a valid loca-

tion. It is a part of the location itself. Therefore he who cannot make a valid location cannot hold possession as the grantee of one qualified to take and to hold the possession. The right to locate and the right to possess go together. They are parts of the same grant. They belong to each other. Neither can exist without the other. If the grant, by assignment or conveyance, falls upon one who is incapable of making a location, his possession is of no consequence; if upon one not qualified to hold possession, the location becomes void.

A valid location is the purchase of a privilege. It is the grant of such an easement or property in the claim located as carries with it the right to acquire a full title upon complying with the law. In order to keep this grant alive, the locator and his grantee must at all times be capable and qualified to receive the full title from the government. This is the scope and extent of the grant, viz., the privilege of becoming a purchaser and of receiving a full title from the government. And so, as a location is but the grant of a privilege to purchase, this privilege cannot be bestowed upon or conveyed to one who is incapable of receiving a government title. Therefore a citizen having this privilege cannot convey the same to an alien, who cannot become a purchaser. If he does, he thereby abandons his privilege, and the grant reverts to the government, which may again bestow it upon any qualified person.

And so a valid location is the acquisition of a possessory title which carries with it the right to purchase from the government. The locator or his grantee is the grantee of the government. This possessory title or right may be bought or sold; but, as between the government and the purchaser, the relation of grantor and grantee must always be maintained, and the purchaser must always have the capacity to receive the full title from the government when he has fully complied with the law. If, therefore, an alien has not the capacity so to possess the

public mineral lands as to make a valid location thereon, so neither has he the capacity to become the grantee of the government through a purchase from a third person who is such grantee. The first grantee acquires his interest because of his ability to possess, and his right to purchase. He conveys to his grantee such rights and interests as belong to him by virtue of his location. One of those rights is the privilege of purchasing from the government and receiving a complete title. His grantee takes his place and becomes the grantee of the government. Therefore, if an alien cannot take by location, he cannot hold by purchase. He cannot do by indirection what he cannot do directly. If the government cannot grant to him the privilege of purchasing, no grantee of the government can bestow upon him this right. If the government cannot grant to him a possessory title, the title that comes from a valid location, then no grantee of the government can convey to him such a title. The reason is that there must be attached to the possessory title the right to acquire a full title. The possessory title, in order to be valid, must be such an one as may ripen into a perfect title. It must be such a title as may be completed by a patent. The grantee of the government cannot enlarge the grant. He cannot convey to an alien what the government is prohibited from conveying to him. Therefore, if the grantee of the government conveys to an alien and goes out of possession, and ceases to represent the claim, he thereby abandons the claim and it becomes subject to location by any qualified person. Such a conveyance is a nullity. It is a conveyance to one incapable of receiving the grant, and is void.

If an alien cannot become the grantee of the government, he cannot become the grantee of the government's grantee. That is only a roundabout way of doing what the government prohibits, viz., the grant of a privilege to an alien which carries with it the right to receive a patent from the government. It is making a grantee of

the government greater than the government itself. It is authorizing him to do what the law prohibits the government from doing. If an alien cannot take possession from the government, he cannot from a grantee of the government. It is the same grant though the grantees may change. It is but one privilege though conveyed from one person to another. Upon each and every conveyance of the privilege or easement the grantee becomes the grantee of the government, and therefore must be capable of receiving the grant as from the government. If he has not this capacity the conveyance is void; and if his grantor abandons the claim, it reverts to the government and becomes subject to location. The full title must exist somewhere. If the privilege or easement does not vest in the grantee, it is still in the government. If it does vest in the grantee, the government holds the balance of the title in trust for him who has the right to purchase. But if the privilege or easement is conveyed to one who cannot become a purchaser, and who cannot receive or hold it; and his grantor has lost his right by abandoning the possession, the grant of the easement necessarily reverts to the government.

The possessory title to a mining claim is held by representing the claim according to law and the local rules of the mining district. The right to represent a claim is included in, and always belongs to and accompanies, the right to make a location. The right to locate and the right to represent are kindred rights, and one of them cannot exist without the other, being necessarily attached to it. They are the parents of each other. The moment that one is called into being the other is born. The right to locate presumes the right to represent, and the right to represent presumes the right to locate. They are linked together. They each have to do with the acquisition of title. They each involve an entry upon the public lands for the purposes of title. They each require the same capacity and call into action the same

right.   Therefore he who cannot acquire a possessory title by location cannot hold it by representation.   A disability that prohibits a location prohibits also a representation.   Being acts of the same quality and kind, and for the same purpose, viz., the acquisition of title from the government, the prohibition that attaches to one also forbids the other.   Hence, if an alien cannot locate a claim, he cannot so represent it as to hold against one who is qualified to make a location.

If an alien can hold a possessory title, he can thereby defeat the government in the sale of its property.   The government cannot convey to an alien, and, if the possessory title of an alien is good, he may hold it forever, and thereby forever defeat the government in its right to dispose of its property.

The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*

#### DISSENTING OPINION.

GALBRAITH, J., dissenting.   The record in this case shows that the respondents, who are Chinamen, and have never declared their intention to become citizens of the United States, purchased the ground in question, which was unpatented mining ground, from Bailey and others, who were citizens of the United States, and in possession of the premises at the time of the purchase by the respondents, and who made a valid location thereof. The appellants claim that the vendors of the respondents having parted with all claim to the premises, and the same being now in the possession of and occupied by persons who are not citizens of the United States and have never declared their intention to become such, that therefore it became public mineral land of the United States and subject to location.

The property in question belongs to that class of property which is termed a mining claim.   At the time of the

conveyance of the ground in question by the vendors to the respondents, the location was a valid one, the vendors having in all respects complied with the laws of the United States and the local rules and customs of the mining district in making such location, and they were in possession thereof. This is not disputed.

· The character of the title to a valid mining claim or · location is that of a grant by the United States of its exclusive possession and enjoyment. This is the highest character of title, except perhaps that of a public grant by the government where the act of congress is itself the · grant. It is equivalent to a patent; it will support eject- ment.

A mining claim perfected as the one in question has · been is property in the fullest sense of the word; it may be the subject of sale, mortgage and inheritance. These positions are supported by abundance of authority. In the case of *Forbes* v. *Gracey*, 94 U. S. 762, the supreme court of the United States, by Miller, J., says: "These claims are the subject of bargain and sale, and constitute very largely the wealth of the Pacific coast. They are property in the fullest sense of the word, and their own- ership, transfer and use are governed by a well-defined code or codes of laws, and are recognized by the state and federal governments. These claims may be sold, transferred, mortgaged and inherited without infringing the title of the United States." The same court, in *Belk* v. *Meagher*, 104 U. S. 279, by Waite, C. J., says: "A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold and conveyed, and will pass by descent." In the same case, referring to the claim therein in dispute, which was. an unpatented mining claim: "On the 19th day of De- cember the right to the possession of this property was just as much withdrawn from the public domain as the fee is by a valid grant from the United States under the authority of law, or the possession by a valid and sub-

sisting homestead or pre-emption entry. . . . A location, to be effectual, must be good at the time it is made; when perfected, it has the effect of a grant by the United States of the right of present and exclusive possession."

In *Belk* v. *Meagher et al.* 3 Mont. 65, the supreme court of this territory, by Wade, C. J., says: "By the terms of this section (referring to section 2319 of the Revised Statutes of the United States), the locator of a mining claim has a possessory title thereto, and the right to the exclusive possession thereof. The words imply property. The right to the exclusive possession and enjoyment of a mining claim includes the right to work it, to extract the mineral therefrom, to the exclusive property in such mineral, and the right to defend such possession. The right to the exclusive possession and enjoyment of property, accompanied with the right to acquire the absolute title thereto, presupposes a grant, and the instrument of this grant, as applied to mining claims upon the public lands, is the act of congress above referred to. This act being of general application to all the mineral lands belonging to the government, and conferring a title or easement therein upon the locator thereof, and vesting the right in him to become the absolute owner to the exclusion of all others, is a legislative grant, and being given by act of congress, is equivalent to a patent from the United States to the same. The title thus conferred upon the locator of a mining claim is a legal title, as distinguished from an equitable one, and such a title as would support an action of ejectment."

We cannot understand that there could be language expressing in stronger terms that mining claims, such as that in question, are property, or indicating a more absolute dominion over it by the owner, than that above given. Such language certainly, if it means anything, must indicate that the title which was in the United States to the property granted, that is, the right to the

exclusive possession thereof, has been wholly divested, and has become absolute in the grantee. It ceased, therefore, to be public mineral land of the United States, and subject to location as such, under section 2319, and could only be restored to that condition by abandonment or forfeiture..

The respondents do not claim by virtue of a location by themselves under the act of congress, but by virtue of a conveyance to them of a title by those who have divested the title of the United States. Section 2319 does not relate in any way to lands which have ceased to be public mineral lands of the United States, nor is there indicated therein any intention to modify the existing law in relation to the transfer of property to an alien, or to create a distinction between mining claims and any other species of property which may be purchased by or devised to an alien, subject to the well-known rule of law, that, "though an alien may purchase land or take it by devise, yet he is exposed to the danger of being divested of the fee and of having his lands forfeited to the state upon an inquest of office found. His title will be good against every person but the state." 2 Kent's Com. pp. 61, 62.

The title to the mining claim in question having passed out of the United States, and being vested in Bailey and others, they had a right to convey the same to the respondents, who could take and hold the same, subject to the above rule of law. "They could take and hold until office found." *Ferguson* v. *Neville,* 61 Cal. 356.

We have said that to restore this property to the public domain there must have been an abandonment or forfeiture thereof. The sale to the respondents was not an abandonment by the vendors. Their right to sell to an alien is recognized by the above rule of law. Therefore the sale to an alien no more constitutes evidence of an abandonment than a sale to a citizen. The disability is not in the vendor to sell, but in the vendee to hold, and

that only so far as the government is concerned, and only then when it has proceeded by office found.

Again, such a sale does not work a forfeiture. There is no provision of the statute, nor any rule of law, which will cause such a sale to work a forfeiture. But even granting that such was the case, it can only be taken advantage of by the government. If such a sale could cause a forfeiture, it would be so because it is in the nature of a condition subsequent. The supreme court of the United States, Field, Justice, giving the opinion, says: "It is settled law that no one can take advantage of the non-performance of a condition subsequent, annexed to an estate in fee, but the grantor or his heirs, or the successors of the grantor, if the grant proceed from an artificial person; and if they do not see fit to assert their right, the title remains unimpaired in the grantee. The authorities on this point, with hardly an exception, are all one way, from the year books down. And the same doctrine obtains where the grant upon condition proceeds from the government. No individual can assail the title that it has conveyed on the ground that the grantee has failed to perform the condition annexed.

"In what manner the reserved right of the grantor for breach of the condition must be asserted so as to restore the estate, depends upon the character of the grant. If it be a private grant, that right must be asserted by entry or its equivalent. If the grant be a public one, it must be asserted by judicial proceedings authorized by law, the equivalent of an inquest of office, at common law, finding the fact of forfeiture and adjudging the restoration of the estate on that ground, or there must be some legislative assertion of ownership of the property, for breach of the condition, such as an act directing the possession and appropriation of the property, or that it be offered for sale or settlement. At common law the sovereign could not make an entry in person, and, therefore, an office found was necessary to determine the estate;

but, as said by this court in a late case, 'the mode of asserting or of resuming the forfeited grant is subject to the legislative authority of the government. It may be after judicial investigation, or by taking possession directly under the authority of the government without these preliminary proceedings.'" *Schulenberg* v. *Harriman*, 21 Wall. 44; *United States* v. *Repeutiquez*, 5 Wall. 211, 268.

There is no pretense that any action of the character above indicated has ever been taken in this case. The title to the mining claim in question was therefore still in the respondents when the appellants made their location. It was not then a part of the public domain. "A relocation on lands actually covered at the time by another valid and subsisting location is void, and this not only against the prior locator, but all the world, because the law allows no such thing to be done." The judgment of the district court should have been affirmed.