CHAPMAN (THORNTON v.). See Case No. 13,997.

## Case No. 2,610.

CHAPMAN et al. v. TOY LONG et al.

[4 Sawy. 28;[1] 1 Morr. Min. Rep. 497.]

Circuit Court, D. Oregon. July 31, 1876.

EQUITY—MINING CLAIM—PLACER CLAIMS—WASTE, INJUNCTION TO RESTRAIN — INJUNCTION TO RESTRAIN THE WORKING OF A MINING CLAIM — LOCATOR OF MINING CLAIM—CHINAMEN, RIGHTS OF, IN THE UNITED STATES.

1. A person who seeks the aid of a court of equity to protect his interest in a mining claim located under the mining laws of the United States, must show a substantial compliance with such laws.

2. Placer claims may be located and occupied jointly.

3. The technical distinction between waste and a mere trespass, has been long disregarded by courts of equity, and the rule now is, that wherever a trespass is attended with irreparable mischief or a multiplicity of suits or vexatious litigation, an injunction will be allowed the same as if it were a case of waste.

4. An injunction will be allowed to restrain the working of a placer gold mine located by the complainants under the United States mining acts, while in the possession of persons not qualified to take and hold such lands.

5. Under the mining laws of the United States, the locator of a mining claim becomes the assignee of the United States, and so long as he complies with the conditions imposed by them and the license to occupy remains in force, the right of the locator to the possession of the land, and to appropriate to his own use the minerals therein, is full and complete; and he need not take any step to purchase the same unless he thinks proper.

[Cited in U. S. v. Nelson, Case No. 15,864.]

6. Article 6 of the treaty of July 28, 1868, with China, in effect secures to Chinamen the right to reside in the United States upon the same terms as the subjects of Great Britain and France, and this implies the right to follow any lawful pursuit or calling not prohibited to the subjects of these two powers.

[Cited in Baker v. Portland, Case No. 777.]

In equity.

Motion for a provisional injunction.

B. F. Dowell and Addison C. Gibbs, for complainants.

Walter W. Thayer, for defendants.

DEADY, District Judge. The complainants, Matthias Chapman, Aaron B. Klise, James Herd, Lorenzo A. Sturgis, and John M. Chapman, allege in their amended complaint that they are citizens of the United States, and that Toy Long and his four co-defendants are "yellow alien Chinamen, who have not declared their intention to become citizens of the United States;" that on February 21, 1875, the miners of Poorman and Jackass creeks district, situate in Jackson county, state of Oregon, duly established rules and regulations for the mines in said district, by which a "claim was declared to

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

be one hundred yards square," and every citizen of the United States allowed to hold one creek and one bank claim by location; that said rules and regulations were duly recorded in said county on February 24, 1876; that on February 28, 1876, the complainants, acting under said rules and regulations, and the act of congress of May 10, 1872 [17 Stat. 91], "to promote the development of the mining resources of the United States," duly located and caused to be surveyed by the proper United States surveyor, certain mineral lands particularly described by metes and bounds on said Poorman creek, lying in township 38 south and 3 range west, of the Wallamet meridian, constituting a parallelogram 20 chains in length and 9-10 chains in width; that on February 29, 1876, the complainants duly posted a notice of their claim to said lands, and caused a copy of the same to be recorded in said county, and a certified copy of such record to be duly posted on said premises on April 15, 1876, of all which the defendants had due notice; that the legal title to the premises is in the United States, and the complainants are entitled to the possession of the same for the purpose of mining for the gold therein, and that such possessory right is of the value of $600. That the defendants, on said February 28, and divers times between that time and the commencement of this suit—May 1, 1876—trespassed upon said premises by mining thereon and carrying away the gold from the same under a claim of right to do so, to the depreciation of the value of said premises; that the defendants are prohibited, by the act of congress and the mining regulations aforesaid, from mining said lands; that they are insolvent and of "bad reputation for truth and veracity;" that the complainants have no means of proving the amount of gold taken from the premises "by these untruthful defendants" except their own testimony, and that said defendants, unless restrained by the order of this court, will do irreparable damage to the premises. The complainants therefore pray for an account, the appointment of a receiver, a decree that the pretended claim of the defendants is illegal and void, and that they be perpetually enjoined from trespassing upon said premises. On June 6 a motion for a provisional injunction was argued and submitted by counsel, upon the complaint.

The occupation and purchase of mineral lands of the United States is regulated by chapter 6 of title 32 of the Revised Statutes, the same being a compilation of the pre-existing acts of July 26, 1866 [14 Stat. 251], July 9, 1870 [16 Stat. 217], May 10, 1872 [17 Stat. 91], and March 3, 1873 [17 Stat. 607], upon that subject. Section 2319 of the Revised Statutes declares that "all valuable mineral deposits in lands belonging to the United States" are "free and open to exploration and purchase, and the lands in which they are found to occupation and pur-

chase by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States." Section 2324 of the Revised Statutes also authorizes "the miners of each mining district" to make rules "not in conflict with the laws of the United States or the state * * * governing the location, manner of recording, amount of work necessary to hold possession of a mining claim," subject to certain requirements, which are briefly these: 1. The location must be marked on the ground so that its boundaries can be traced; 2. The record of the claim must contain the date of the location. "the name or names of the locators," and such a description of the claim, by reference to some natural object or permanent monument, as will identify the same; 3. The performance of $100 worth of work or improvement on each claim located after May 10, 1872, yearly, until the issuing of a patent therefor. But when claims are "held in common," such expenditure may be made upon any one claim; and upon the failure of any one of several co-owners to contribute his proportion of these expenditures, his interest shall "become the property of his co-owners who have made the required expenditures."

The law of the state (Code Or. p. 687, §§ 5, 6) provides that the county clerk shall record the notice of a miners' meeting organizing a mining district, and empowers miners "to make local laws in relation to the possession of water rights and working of placer claims * * * subject to the laws of the United States."

The mining laws of the district in question provide that each person shall be allowed to hold one creek and one bank claim of one hundred yards square by location; that one day's work in each week shall be done on each claim as long as there is "a ground sluice-head of water in the creek; provided, if the claims are together, the work may be done on any one of them;" that no "Mongolian or alien who has not declared his intention to become a citizen of the United States," shall hold or work any claim; that if any person shall employ any Mongolian or such alien to work on a mining claim for one month, or shall employ any Chinaman who was not in Oregon at the adoption of the state constitution, to work such claim "for ten days before the entry of the same at the land-office," he shall forfeit the same, and it shall be open to relocation by "any eligible" person.

The reference to the adoption of the constitution of the state grows out of section 8 of article 15 of that instrument, which reads as follows: "No Chinaman, not a resident of the state at the adoption of the constitution, shall ever hold any real estate or mining claim, or work any mining claim therein." This constitution was adopted by the popular vote on November 9, 1857, but did not go into effect until the admission of the state into the Union, February 14, 1859.

Counsel for the defendants object to the allowance of the motion because it appears that the location includes too much ground —nearly ten claims of one hundred yards square, instead of five—and is therefore illegal. As already stated, the complaint describes the premises by metes and bounds, showing them to be in form a parallelogram of about one hundred and ninety-eight yards in width and four hundred and forty yards in length, and lying on the right or west bank of Poorman creek. But it contains no allegation, as it should, concerning the character of the claims inclosed within these limits, as to whether they are all creek or bank claims, or of both kinds, and if so, in what proportion. Neither does it appear that·the plaintiffs are in the actual possession of the premises, but rather the contrary. Their rights then are merely such as result from having located the premises as mineral lands, under the mining laws and regulations, and that, too, over the heads of others already in the actual occupation of them. When parties, under such circumstances, seek the aid of a court of equity— even if the alleged trespassers are Chinamen and not expressly authorized to occupy or enter mining lands—they must bring themselves within the law authorizing the location and show a substantial compliance with its terms.

In this case, it being apparent that the land located includes more than one claim to each locator and complainant, while the local law only allows a person to locate one claim, except where one is a creek and the other a bank claim, there ought to have been a distinct allegation in the complaint, to the effect that the premises comprised an equal number of such claims. And if there is not otherwise enough in the complaint to enable the court to ascertain this fact the location must be treated as an illegal one and the motion for an injunction denied. But it is manifest, from the description of the premises, that this location is equally composed of creek and bank claims, and therefore may contain two to each locator. A creek claim is a tract of one hundred yards square, one side of which abuts on the creek, or rather extends to the middle thread of it, while a bank claim is a tract of the same size lying back of and abutting upon a creek claim. This being so, all the land in this location between the creek and a line parallel thereto, and one hundred yards distant therefrom, is creek land, while that lying west of such line is bank land.

The complainants being each entitled to locate a creek and bank claim, together they might have included a tract on the creek two hundred yards wide and five hundred yards

long. As it is, they have only taken about ninety-seven thousand yards, or nine and one-half claims, instead of the one hundred thousand yards, or ten claims, which the law in its wisdom allowed them.

For this act of self-denial "the heathen Chinee," who appear to have no rights on Poorman creek that a miner is bound to respect, and who had probably bought this ground and long worked it as their own, are doubtless duly thankful. Yet, to compare small things with great, if at some distant day the moral of this predatory transaction should be called in question, the defendants will hardly have cause to exclaim with Lord Clive, when charged in the house of commons with helping himself to the treasury of Bengal after the signal victory of Plassey: "I am astonished at my own moderation."

On the argument of the motion it was also objected to the location, that parties could not locate placer claims jointly. But I find nothing in the law or regulations, or the nature of things to support this proposition. On the contrary, section 2324 of the Revised Statutes makes express mention of "co-owners" of mining locations, without reference to the fact of whether they are upon "placers" or rock in place; and provides for forfeiting the interest of any of such co-owners who may fail·to contribute his share of the expenditures required by law, while section 2330 expressly provides for the joint entry and patent of contiguous placer claims owned by two or more persons, which necessarily implies that 'they may be located and occupied jointly before such purchase.

It is also insisted that the complainants must first obtain possession of the premises by an action at law before a court of equity will interfere to restrain the defendants from committing the threatened trespasses. The remedy by injunction was once confined to waste, or cases of trespass between parties who were privies in title, such as landlord and tenant, mortgagor and mortgagee, tenant of the particular estate and remainder man, and in those cases the complainant was of course not in possession. But the distinction between the trespass technically called waste, and the ordinary trespass between parties who are strangers or claiming adversely to one another, has been gradually disregarded by courts of equity, until it cannot now be said to exist. Wherever a trespass is attended with irreparable mischief or a multiplicity of suits or vexatious litigation, the remedy by injunction will be applied the same as if it were technical waste. Story, Eq. Jur. §§ 918, 928; Adams' Eq. 109. An injunction is now allowed in all cases of trespass upon mines, upon the ground that the acts complained of are, or may be, an irreparable damage to this particular species of property. Id. § 918; Livingston v. Livingston, 6 Johns. Ch. 499; Mining Co. v. Fremont, 7 Cal. 320. And this doctrine is particularly applicable to the case of a continued trespass

upon a placer gold mine—the value of which consists wholly of auriferous deposits, that may be worked out and removed without leaving any evidence of their quantity or value upon which to base an estimate or account, as in the case of coal, stone, and other minerals not precious. If, then, the complainants, by their location, have acquired a right to possess the premises and appropriate the minerals contained therein, the defendants can have no such right, and the exercise of it by them is an irreparable injury to the interest of the complainants, and the latter are entitled to the injunction asked for. Prior to the passage of the acts aforesaid concerning the mineral lands, strictly speaking, all persons who occupied them for the purpose of mining, were naked trespassers, at least as against the United States. As between the first occupants and third persons, from the necessity and convenience of the case, the courts held that the former were not trespassers, and were entitled to the protection of the law as persons in the possession of portions of the public domain, with the assumed assent of the owner. Mining Co. v. Fremont, Id. 319; People v. Shearer, 30 Cal. 655. But under the mining laws of the United States now in force, the locator of a mining claim, as to the right to the possession of the premises and to appropriate the minerals therein, becomes and is the assignee of the United States so long as the law remains in force and he complies with the conditions imposed by it. Until congress withdraws this license by a repeal of the law, the right of the locator to the possession ·of his claim and to appropriate to his own use the mineral deposits therein is full and complete, and he need not take any steps to purchase the land or obtain a patent for it. That is a matter left to his own option or sense of self-interest.

It is admitted that the complainants have taken all the steps necessary to make a technical location of this ground as placer mining claims. It is not necessary that they should show that they have done any work upon it. As the law stands, they have until next February to make the required expenditure upon it for the first year. Their right, then, under the law and regulations to the possession of the ground, and to appropriate the minerals found in it, is perfect, unless the occupancy of the defendants, at the time of the location, had the effect to exclude the premises from the operation of the mining acts, and therefore preclude the complainants from taking it up as mining land "belonging to the United States." With every desire to reach such a conclusion, I cannot see how such an effect can be given to the prior occupation of the defendants, without disregarding the plain letter and purpose of the law. The license contained in section 2319, supra, to explore, occupy and purchase any of the lands of the United States containing mineral deposits, is confined to

citizens of the United States, and those who have declared their intention to become such. The defendants, being aliens, are not within the purview of the law, and by an almost necessary implication, are prohibited from the exercise of the rights conferred by it. When there was no legislation upon the subject, the assumption that the occupant was in possession with the consent of the United States applied as well to aliens as citizens, and to Chinamen, as others. But since the passage of the acts prescribing who may occupy the public lands containing mineral deposits, there can be no presumption as against a person making a location under such acts, that a person not included therein is occupying any of such lands with the consent of the United States. As has been said, a locator under these acts, as to the possession of the soil and the appropriation of the minerals therein, for the time being, is the assignee of the United States, and as against an unqualified occupant of the premises he is entitled to the same remedies to which his assignor would be entitled. Nominally, these acts discriminate against the alien generally, but in fact against the dreaded Chinaman only; because all aliens, including the Congo negro, except the Mongolian, are permitted to become naturalized, and therefore qualified to locate and occupy mining lands under them.

Article 6 of the treaty with China, of July 28, 1868 (U. S. Pub. Treat. 148), provides that citizens and subjects of the two nations shall respectively enjoy the same privileges, immunities or exemptions, in respect to travel or residence "within the country of the other," as may there be enjoyed by the citizens or subjects of the most favored nation.

The right to reside in the country with the same privileges as the subjects of Great Britain or France, implies the right to follow any lawful calling or pursuit which is open to the subjects of these powers. Therefore the provisions in the mining regulations of Poorman creek, which, in effect, forbid Chinamen from working in a mining claim for themselves or others, as well as the clause of the state constitution, supra, to the same effect, seem to be in direct conflict with this article of the treaty; and if so, are therefore void. Practically the latter has always been a dead letter. Both it and the similar prohibition in relation to free negroes (section 35, art. 1, Const. Or.) were generally regarded, at the time of the formation of the state constitution, as a mere piece of brutum fulmen, intended to quiet the fears and placate the prejudices of a certain class of voters who were supposed to stand in dread of being overslaughed by an influx of these black and yellow people.

But whether the treaty reaches the point involved in this case, is a question that has not been argued by counsel, and therefore will not now be passed upon. Assuming that it does not, I am constrained to hold that the complainants, by their location, have, for the time being, become entitled to possession of the premises, and the right to appropriate the minerals therein to their own use; and that, therefore, the defendants, although in the peaceable possession of the claims when located by the complainants, are now in law trespassers upon the legal rights of the latter. Let an injunction issue commanding defendants to desist from working the premises until the further order of this court.