[No. 8489.   In Bank. — November 24, 1885.]

## LEE DOON ET AL., APPELLANTS, *v.* DANIEL TESH ET AL., RESPONDENTS.

MINING CLAIM — ACTION TO DETERMINE RIGHT OF POSSESSION — CITIZENSHIP — PLEADING—DISMISSAL. —- In an action brought by several adverse claimants, in pursuance of section 2326 of the United States Revised Statutes, to determine the right of possession to a mining claim, the complaint must allege that the plaintiffs are, or have declared their intention to become, citizens of the United States. If the complaint alleges that one of the plaintiffs is a citizen, and contains no allegation as to the citizenship of the others, the action should be dismissed as to the latter, but not as to the former.

ID. — MINERAL LANDS — ACTS OF CONGRESS. — Prior to the act of Congress of July 26, 1866, relating to mineral lands, the occupation and working of such lands did not confer upon the occupant any right or title thereto as against the government of the United States or its grantees; and under that act, an occupant, not being a citizen of the United States, nor having declared his intention to become such, had no rights to be protected by the act of May 10, 1872, amendatory of the former act.

APPEAL from a judgment of the Superior Court of Siskiyou County.

The facts are stated in the opinion.

*H. B. Warren, H. B. Gillis, Nagle & Nagle,* and *Dwinelle & McClure,* for Appellants.

*Calvin Edgerton,* and *A. M. Rosborough,* for Respondents.

SEARLS, C.—After an examination of the record in this cause, and of the former decision rendered therein by Department Two, we are of opinion the judgment rendered is founded upon a correct exposition of the law applicable thereto.

Defendants had applied through the United States land-office for a patent to the Clark & Co. placer mine. Plaintiffs, who claim to own the Greenhorn Hydraulic placer mine, filed a protest and adverse claim in the land-office, claiming 24.30 acres, parcel of the land applied to be patented, and thereupon the register and receiver stayed proceedings in the land-office; and thereafter suit was brought as provided by section 2326, Revised Statutes of the United States, to determine the question of the right of possession to said disputed mining ground.

The complaint avers that William McConnell, one of the plaintiffs, is a citizen of the United States, a resident of the county, etc., but is silent as to the citizenship and residence of the other plaintiffs.

The action was not brought to recover possession of the property or damages for a trespass thereon, or to quiet title thereto, but is a special action to determine the right of possession preliminary to the right to purchase from the United States.

Lands valuable for minerals are reserved from sale, except as otherwise expressly directed by law. (U. S. R. S., sec. 2318.)

All valuable mineral deposits in lands belonging to the United States are free and open to exploration and purchase by citizens of the United States, and those who have declared their intention to become such. (U. S. R. S., sec. 2319.)

A patent for any land, claimed and located for valuable deposits, may be obtained by any association, person, or corporation *authorized to locate a claim* under the chapter on mineral lands and mining resources. (U. S. R. S., sec. 2325.)

1. The right to possession of a mining claim comes through a location, and such location can only be made by a citizen, or one who has declared his intention to become such.

2. An applicant for a patent must have the right to possession, and, as we have seen, must be a qualified locator.

3. Upon the determination of the right to possession as provided for by section 2326 of the Revised Statutes of United States, the prevailing party, upon filing a copy of the judgment roll with the register of the land-office, together with the certificate of the surveyor-general, showing that the requisite amount of labor has been performed or improvements made, with a description of the premises, and upon paying the proper fees and purchase price of the land, may have a patent to the land, or such portion thereof as he has shown himself to "rightly possess."

It would seem to follow that as the right to possession and the right to a patent are made to depend upon citizenship, the complaint which forms the basis upon which these rights are supported should show the plaintiffs to possess those qualifications without which the judgment they seek, and the consequences to flow from that judgment, cannot be reached.

Where a right is conferred upon a particular class of persons, or by reason of possessing some special qualifi-

cation or *status*, he who claims such right must show himself to belong to the class designated, or to possess the qualification prescribed, or the *status* mentioned as the basis of the right.

The contention of counsel for appellants is, that the complaint shows that the plaintiffs and their predecessors in interest have for twenty-five years and upward been the owners, subject only to the paramount title of the United States, and have occupied and worked the mining ground in question, etc.; that their right to the mining ground was acquired prior to the act of Congress of May 10, 1872; that the statute is not retrospective; and that by section 2344 of that act their rights are preserved.

Section 2344 provides that " nothing contained in this chapter shall be construed to impair in any way rights or interests in mining property acquired under existing laws."

The question then arises, Had the plaintiffs, prior to May 10, 1872, acquired any rights under the then existing laws, to be protected by section 2344 of the Revised Statutes?

Upon the discovery of gold in California, and the influx of immigrants following that discovery, it became the duty of the courts organized to meet the novel circumstances surrounding them, and to administer justice in view of all the facts presented. The paramount title to the mineral lands was in the government of the United States. That government, by the act of Congress of 1850 (9 U. S. Stat. 452), admitting California into the Union, expressly provided that the people of that state, through their legislature or otherwise, should never interfere with the primary disposal of the public lands within its limits, and should pass no law and do no act whereby the title of the United States to and right to dispose of said lands should be questioned or impaired. Beyond this action, the general government for several

years remained practically a passive spectator of the set-
tlement upon and development of its mineral lands in
California. The right of the United States to the lands
in question was never seriously questioned, nor was its
authority to dispose of such lands, at such time and in
such manner and to such persons as it should by law
provide, doubted.

The legislature of California and its courts, each in its
appropriate way, took action in reference to the possessory
rights acquired by settlers and locators upon the public
domain. As to the public mineral lands of the state, the
courts held them open to appropriation and occupancy
for mining purposes, and in a multitude of cases adjudi-
cated upon conflicting rights thereto, and growing out of
the assertion by individuals of such rights, until a system
of jurisprudence governing and controlling in questions
relating to mines and mining rights was formulated, and
occupies a prominent place in the legal annals of the
state. It was founded to a great extent in the necessities
of the case. The general government was the true owner,
but not asserting its title, the theory was maintained
that possession under the rules and customs established
and in force gave as to mining property a right which,
except as against the government, would be upheld as
though the title were vested in the possessor.

Nothing can be found, however, in the legislation or
decisions of our courts which militates against the ulti-
mate right of the general government to deal with its
lands within our jurisdiction as a proprietor thereof may
do.

Up to 1866 the United States had not authorized, or,
except by its silence, in any way assented to, the occu-
pancy of any of its mineral lands in California; and
instead of having an equitable title thereto, the plaintiffs,
in common with all other claimants in possession of
mining claims upon public lands, were, as against the
government of the United States, subject to be treated

as trespassers, and to be punished by fine and imprisonment.    (2 U. S. Stat. 445.)

The courts of the United States have steadily held that no license to mine for the precious metals upon the public lands could be implied, by reason of the indulgence or tacit encouragement of the government, extended to the mining population.    (*United States* v. *Parrott*, 1 McAll. 271; *United States* v. *Castillero*, 2 Black, 17.)

If we are correct in these deductions, plaintiffs could not have, and prior to 1866 did not have, as against the government of the United States, or those holding under it, any vested right or equitable title in or to any mining claim in California.

The passage of the act of July 26, 1866 (14 U. S. Stat. 251), "marked a change in the governmental policy, and introduced a new era in the history of mining enterprise."    (Weeks on Mineral Lands, p. 2.)

By the first section of that act it was provided:—

"That the mineral lands of the public domain, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and occupation by all citizens of the United States, and those who have declared their intention to become citizens, subject to such regulations as may be prescribed by law, and subject also to the local customs or rules of miners in the several mining districts, so far as the same may not be in conflict with the laws of the United States."

Thus for the first time in the history of the country its public domain was opened to exploration for mines and mineral, and to the occupation of such mines as might exist and be discovered therein.

The first section of the act was general in it application, and applied alike to veins or lodes of quartz, or other rock in place, bearing gold, silver, cinnabar, or copper, and to placer or gravel mines.

The license to explore, enter, occupy, and mine was general, but the subsequent sections of the same act,

providing for securing title from the government by claimants, applied only to veins or lodes of quartz or other rock in place.

So, too, the right or license to explore and occupy for mining purposes was limited to citizens of the United States, and to those who had declared their intention to become such.

It follows, that if plaintiffs were not citizens, and had not declared their intention to become such, they did not acquire any vested right to possession under the act of 1866, and as a consequence had no rights to be preserved by the act of 1872. (U. S. R. S., sec. 2344.)

The act of Congress of May 10, 1872, repealed the first section of the act of 1866, but retained the same provision in reference to the necessity of citizenship of locators as that contained in the repealed section.

It goes further than the act of 1866, by providing that any person, association, or corporation authorized to locate a claim under that act, who had complied with the terms of the act, might obtain a patent for land claimed and located for valuable deposits.

Placer claimants might procure patents to their claims, but like locators they must be citizens, or must have declared their intention to become such.

The right is given, not to all persons indiscriminately, but to a particular class of individuals, and the pleadings in these special cases should show that the persons who seek to avail themselves of the special privileges conferred by the act of Congress are within the class thus privileged.

There is nothing in this view of the case in conflict with *Ferguson* v. *Neville,* 61 Cal. 356. In that case the mining claim had been regularly located by American citizens of lawful age, who conveyed to Chinamen, who, after holding for about one year, conveyed to Ferguson, who was a citizen and competent to locate and purchase mining claims. This court held that by the original lo-

LXVIII. CAL.—4

cation a qualified title vested in the locators,—that under article 1 of section 17 of the constitution in force at that time, foreigners who were *bona fide* residents of the state could purchase and hold property; and having conveyed to Ferguson before the location was made under which Neville claimed, the conclusion was reached that plaintiffs had a good title.

Had the location in that instance been made by foreigners, the case would have been parallel with this, and it would probably have been held that no right to the claims was acquired by such an attempted location.

We must not be understood as holding that in all actions in relation to mining claims it is necessary for plaintiffs to aver citizenship.

We are discussing the requirements of a complaint in the special case provided by the act of Congress to determine the right of possession of a mining claim, under the laws of Congress, in which the successful party becomes entitled on the judgment roll to apply for a patent, —a case in which the parties must connect themselves with the title of the government and show compliance with the acts of Congress, and our conclusions are limited to such action; or, to put the case more logically, where the plaintiff counts upon having acquired a specific right or title to property, which can only be so acquired by a given class of persons, he must show himself one of that class.

We are of opinion, as stated at the outset, that the former judgment herein should stand as the judgment of the court.

FOOTE, C., and BELCHER, C. C., concurred.

THE COURT.—For the reasons given in the foregoing opinion, the judgment as to plaintiff McConnell is reversed, with directions to the court below to overrule the demurrer to his complaint, with leave to the defendants to answer within ten days after being notified thereof. In other respects the judgment is affirmed.

The following opinion, above referred to, was rendered in Department Two, on the 27th of February, 1885:—

SHARPSTEIN, J.—This was an action brought under the provisions of section 2326, U. S. Revised Statutes, to have the right of possession of a certain mining claim determined, between the plaintiffs, six in number, and the defendants.

The plaintiffs allege that one of them, William Mc-Connell, is a citizen of the United States, and a resident of the county in which the action was commenced. There is no allegation as to the citizenship of any of the other plaintiffs.

The complaint was demurred to on the following grounds:—

1. That it did not state facts sufficient to constitute a cause of action.

2. A misjoinder of parties plaintiff.

3. That plaintiffs, other than McConnell, have not legal capacity to sue, it not being alleged that they are citizens.

The court sustained the demurrer on the second ground, and dismissed the action generally. The complaint, in our opinion, states facts sufficient to constitute a cause of action, and the demurrer admits that the plaintiff, McConnell, had legal capacity to sue. The demurrer, therefore, could not have been sustained on any other ground than that upon which the court based its decision; and not on that, unless it was proper to dismiss a complaint which showed that only one of several plaintiffs had a cause of action.

This question is ably discussed by Professor Pomeroy, in his work on Remedies and Remedial Rights, commencing at section 209. The conclusion at which he arrives is, that under the reformed procedure, the judgment in a case like this should be only against the plaintiffs, who having no cause of action, had been improperly joined with one who had a cause of action.

The reasons which he gives for his opinion are entirely satisfactory to us.

.As the action is purely statutory, and the statute provides that citizens of the United States, or those who have declared their intention to become such, may avail themselves of the privileges offered, we think the complaint in this action should contain an allegation that all the plaintiffs are citizens, or have declared their intention to become such, and that, as to such of the plaintiffs as have failed so to allege, the action should be dismissed. But not as to the plaintiff who is alleged to be a citizen.

The judgment as to the plaintiff McConnell is reversed, with directions to the court below to overrule the demurrer to his complaint, with leave to the defendants to answer within ten days after being notified thereof. In other respects the judgment is affirmed.