### GORMAN MINING COMPANY V. ALEXANDER *et al.*

One of the locators of an unpatented mining claim duly and legally located by citizens of the United States in 1887 conveyed his interest in said claim, in 1883, to an alien, who in 1887—prior to the relocation of such claim by the defendants—conveyed the same to the plaintiff, a corporation qualified to locate, hold, and purchase the mineral lands of the United States. *Held*, that such alien, under the laws of Dakota Territory, then in force, which provided that "any person, whether citizen or alien, may take, hold, and dispose of property; real or personal," within said territory, could and did, as against everybody but the holder of the paramount title, by such conveyance acquire and hold the title of such locator, acquired by him by such location, under the laws of the United States, and had the right to convey the same, as against all persons except the holder of the paramount title. *Held, further*, that a conclusion of law by the trial court that such conveyence from said locator to such alien was in effect an abandonment of the claim, and that claim therefore became a part of the public domain of the United States, and was subject to relocation by any qualified person, was erroneous.

(Syllabus by the Court.    Opinion filed March 2, 1892.)

Appeal from circuit court, Pennington county.    HON. JOHN W. NOWLIN, Judge.

Action to quiet title.    Judgment for defendants.    Plaintiff appeals.    Reversed.

The facts are fully stated in the opinion.

*Day, Bangs & Haynie,* and *Clarke & Boyd,* for appellant.

A title to mineral land, duly diverted from the United States government, becomes property in the fullest sense of the word. Forbes v. Gracey, 94 U. S. 762; Belk v. Meagher, 104 U. S. 279; Gwillen v. Donellan, 115 U. S. 45; Noyes v. Mantle, 127 U. S. 348; Mercer v. Fremont, 7 Cal. 317; Crandall v. Woods. 8 Cal. 143; Bird v. Lisboes, 9 Cal. 1; Mc Keon v. Bisbee, 9 Cal. 137; State v. Moore, 12 Cal. 56; Watts v. White, 13 Cal. 321; Merritt v. Judd, 14 Cal. 59; Hughes v. Devlin, 23 Cal. 501; Spencer v. Winselman, 42 Cal. 479. It becomes subject to the laws of the state where situated. The mayor v. Geo. Miln, 11 Peters, 102.

In 1883, an alien could take, hold and dispose of real or personal property. § 2686, Comp. Laws. § 870 Rev. Code 1877; Ferguson v. Neville, 61 Cal. 356; Le Doon v. Tesh, 63 Cal. 50; *In re* Ole O. Krogstadt, 4 Dec. Int. Dept. 564; Jackson v. Beach, 1 Johnson's Cases, 399; Governeur's Heirs v. Robertson, 11 Wheaton, 332; Osterman v. Baldwin, 6 Wallace, 116; Croesus v. Colorado, 19 Fed. 78; State v. Smith, 12 Pac. 121; Sec 1, Act of Cong. Mch. 3d, 1887; § 97, Organic Law, Comp. Laws.

The title acquired by an alien by purchase is not divested until office-found. Fairfax v. Hunter, 7 Cranch, 603; Orr v. Hodgson, 4 Wheat. 453; White v. Bumley, 20 Howard, 235; Cross v. Del Valle, 1 Wallace, 5; Rust v. Rock Island, 97 U. S. 69; Diablo v. Allison, 11 Mining, 633; Craig v. Redford, 3 Wheat. 594; Van Wyck v. Knevals, 106 U. S. 693; Hammekin v. Clayton, 2 Cent. L. J. 188; Hepburn v. Dunlap, 1 Wheat. 179; Ramires v. Kent, 2 Cal. 558; People v. Folsom, 5 Cal. 373; Mitchell v. Hagood, 6 Cal. 148; Norris v. Hoyt, 18 Cal, 217; Merle v. Matthews, 26 Cal. 148; Racouillat v. Sansevain, 32 Cal. 376; Haurick v. Patrick, 119 U. S. 169; Phillips v. Moore, 100 U. S. 208; Settegast v. Schrimpf, 33 Tex. 341; Barrett v. Kelly, 31 Tex. 476.

A sale of a mining claim to an alien is not an abandonment or forfeiture. North v. Orient, 9 Mining, R. 526; 1 Fed. 522. Until abandoned or forfeited no adverse entry could be made on the premises. Belk v. Meagher, 104 U. S. 279.

Workmen in a mine cannot dispute their employers title, basing their right on the work they have done therein. Utah v. Dickert, 5 Lawyer's R. Ann. 259; Murphy v. Cobb, 5 M. R. 330; Turner v. Reynolds, 12 M. R. 190.

*Schrader & Lewis,* for respondents.

An alien can not locate, purchase or transfer mining claims. U. S. Stat. § 2319; Copp's M. Law; p. 1; Tibbetts v. Ah Tong, 2 Pac. 759; Anthony v. Jillson, 83 Cal. 296; 23 Pac. 419; Wolf v. Manuel, 9 Mont. 276; 23 Pac. 723; Keeler v. Trueman, 25 Pac. 311; Bohanon v. Howe, 17 Pac. 583; Rosenthal v. Ives, 15 M. R. 324; O'Reilly v. Campbell, 116 U. S. 418; McKinley v. Wheeler, 130 U. S. 630; Thomas v. Chisholm, 21 Pac. 1019; Chapman v. Toy Long, 4 Sawyer, 28; 1 M. R. 504; Wood v. Aspen, 36 Fed. 25; Beekner v. Corts, Copp's M. L. 188.

If an alien own more than twenty per cent of the stock of a corporation, it cannot acquire, hold or own any real estate in the territories. Gen. Stat. U. S. Laws 1887, p. 477; Opinion Att. Gen. Garland. The Reporter, July, 1887, p. 87; Potter v. Rio, 17 Pac. 609; Chater v. Co. 19 Cal. 246; Coleman v. Columbia, 51 Pa. St. 74; Jones v. Morrison, 16 N. W. 854; Gray v. Portland, 3 Mass. 363.

A re-locator, reciting in his certificate a prior location, is estopped to deny the validity of the prior location. Wills v. Blaine, 20 Pac. 798; Harrington v. Chambers, 1 Pac. 367.

In an action to quiet title under claim of absolute ownership of the whole premises, proof of title to only one-fourth will not be sufficient. Johnson v. Murray, 13 N. E. 273; Ragsdale v. Mitchell, 97 Ind. 458; Stearn v. Lagel, 21 N. E. 533; Vantengorin v. Hefferman, 38 N. W. 52.

CORSON, J. This was an action brought by the plaintiff to determine the right to the possession of 6.82 acres of a mining claim in pursuance of the provisions of Section 2326, Rev. St. U. S., for which an application for a patent, including the ground in controversy, had been made by the defendants under the provisions of Section 2325, Rev. St. U. S., and judgment rendered in favor of the defendants, from which the plaintiff has appealed to this court.

The plaintiff claims the ownership of the mining ground in controversy under and by virtue of a mineral location made in 1877, known as the "Lady of the Hills Lode" and the defendants claim the same under a location made in 1887, known as the "Alexander Lode." The action was tried by the court, which found the facts and stated its conclusions of law thereon. These findings are lengthy, and only the substance of a few of them need be stated to a proper understanding of the questions presented in this case. The court finds that the Lady of the Hills lode, under which plaintiff claims title, was duly and properly located in 1877 by citizens of the United States, and that during each year since its location, up to and including 1882, and also in the year 1887, the locators, and those claiming under them, have done the required amount of work upon said claim. The court further finds that in 1883 John H. Leary, one of the locators of the Lady of the Hills lode, conveyed his interest in the same by quit-claim deed to one Thomas Gorman, who in May, 1887, transferred the same to the plaintiff, the Gorman Mining Company; that said Gorman was at the time he received such conveyance an alien, and remained such until February, 1888, when he declared his intention to become a citizen, and that since 1877 he has been a *bona fide* resident of Pennington county, in the former territory of Dakota, and now state of South Dakota. The court further finds that in May, 1887, when the Lady of the Hills lode was transferred to it by Gorman, the plaintiff entered into and continued in the quiet and uninterrupted possession of said claim until the 5th day of December, 1887, and that the plaintiff is a corporation duly organized and existing under the laws of the state of South Dakota, and is competent to locate, hold and purchase the mineral lands of the United States. The court further finds that the defendants made the location of the "Alexander Lode" on the 5th day of December, 1887; that the locators were, and the defendants are, citizens of the United States; and that in making such location the locators duly performed all the acts required by law to make a good and valid location. The court concludes as matter of law that Thomas Gorman, being an alien, could

neither take, hold, nor transfer any interest or estate in the mining ground in controversy previous to the 25th day of February, 1888, and the deeds from Leary to Gorman, and from Gorman to plaintiff, purporting to convey their interest in the Lady of the Hills lode claim, were null and void, and transferred no interest nor estate thereby. And the transfer by deed from Leary, a citizen, to Gorman, an alien, of the Lady of the Hills lode, was an absolute abandonment and forfeiture of said lode claim, and thereafter said lode claim was subject to relocation by any qualified person; and that the location of the Alexander lode claim by the defendants was a good and valid location under the laws of the United States and of the territory of Dakota. That the defendants are the owners thereof, subject to the paramount title of the United States, and are in the peaceable and lawful possession thereof, as the same is described in paragraph 5 of the answer; and that said plaintiff has no right, title, interest, or estate in or to said Alexander lode claim or any part thereof.

From these findings of fact it will be seen that the Lady of the Hills lode was located, in 1877, by citizens of the United States, and was a valid location under the mining laws, and that the required amount of work was performed each year upon the claim prior to 1883, and also during the year 1887, when the claim, including the ground in controversy, was located by the defendants, and before the Alexander lode was located. It will be further noticed that in 1883 John H. Leary, one of the locators of the Lady of the Hills claim, conveyed the same to Thomas Gorman, who was at the time an alien, and that Gorman, while such alien, transferred the same to the plaintiff, a corporation capable of locating, holding and patenting mineral lands. The principal question, therefore, presented on this appeal is as to the correctness of the second conclusion of law of the court,—that the conveyance by Leary to Gorman in 1883, by reason of the fact that Gorman was an alien, was null and void, and was, in legal effect, an absolute abandonment of the Lady of the Hills claim; and that after its conveyance to Gor-

man, it became a part of the public domain, and was subject to location by any properly qualified person. The court in its eighth finding of fact, found "that on the 8th day of November, 1887, the Lady of the Hills claim was vacant, public mineral lands of the United States, subject to location;" but this finding must be treated, in connection with its other findings, as a conclusion of law made upon the theory, as stated by the court in its second conclusion of law, that the conveyance of the Lady of the Hills lode to Gorman, an alien, was utterly null and void, and the claim thereby abandoned, as the court found that the location of that claim was a valid location, and that the requisite amount had been expended upon the claim each year up to 1883, and also during the year 1887, prior to the location made by the defendants. The learned counsel for appellant contend that Gorman, though an alien, was by the laws of Dakota territory, in force at the time the Lady of the Hills claim was transferred to him, entitled to take, hold, and dispose of property, real and personal, under Section 2686, Comp. Laws, which provides as follows: "Any person, whether citizen or alien, may take, hold, and dispose of property, real and personal, within this territory." This section was contained in the Civil Code of 1877, and remained in force until virtually repealed by Section 1, of the act of congress approved March 3, 1877. Section 97, Organic Act. That section provides that "it shall be unlawful for any person or persons, not citizens of the United States, or who have not lawfully declared their intention to become such citizens, * * * * * to hereafter acquire, hold, or own real estate so thereafter acquired, or any interest therein, in any of the territories of the United States." But, as Gorman had acquired whatever right he had prior to the passage of the last mentioned act, it did not affect his title. The learned counsel for respondents, however, contend that under the laws of the United States an alien is not authorized to hold and possess mineral lands, and therefore Gorman, as such alien, could neither locate, occupy, nor possess as purchser such lands, and hence the attempted conveyance from Leary to him of the Lady of the Hills claim is to be

controlled entirely by the law of congress, and that such conveyance was in legal effect an abandonment of the claim. The provisions of the law of the United States bearing upon this question are as follows:    Section 2319, Rev. St. U. S.: "All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States, and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States." Notwithstanding the land in controversy is mineral land, the superior title to which is in the United States, and no state or territorial law can in any manner effect this superior title or control the United States in its disposition of the same, yet the locator of a mining claim, by making a valid location of the same, acquires a qualified ownership in the claim located that is recognized as property. The supreme court of the United States, in speaking of right acquired by a valid location of a mining claim, says. "Such right as the mining laws allow and as congress concedes to develop and work the mines is property of great value.  *  *  *  These claims are subjects of bargain and sale, and constitute very largely the wealth of the Pacific coast states. They are property in the fullest sense of the word, and their ownership, transfer, and use are governed by well-defined code or codes of laws, and are recognized by the states and the federal government. This claim may be sold, transferred, mortgaged, and inherited without infringing the title of the United States." Forbes v. Gracey, 94 U. S. 762. Again, the same court, referring to the title of the miner in his location says:  On the 19th day of December the right to the possession of the property was just as much withdrawn from the public domain as the fee is by a valid grant from the United States under the authority of law, or the possession by a valid and subsisting pre-emption entry.  *  *  *  A location to be

effectual, must be good at the time it is made. When perfected, it has the effect of a grant by the United States of the right of present and exclusive possession." Belk v. Meagher, 104 U. S. 279. See, also, Gwillim v. Donnellan, 115 U. S. 45, 5 Sup. Ct. Rep. 1110.

The locators of the Lady of the Hills lode being found by the court below to be citizens of the United States, and therefore competent to make a valid location of that claim, and the court having further found that in making the location they complied with the laws of the United States, the laws of the territory, and the customs, rules, and regulations of miners in the district in which the claim was situated, they did by such location become the grantees of the United States of the exclusive right to the possession of such claim, and did thereby acquire a qualified title to the property, which they were authorized to convey to any person who might desire to purchase the same. The territorial law, as we have seen, authorized an alien to take, hold, and transfer property, real and personal, within this territory. In taking the conveyance from Leary of his interest in the Lady of the Hills claim, Gorman, therefore, violated no territorial law; and if, by reason of his alienage, he was not authorized to hold the same, it was only as against the government of the United States, of which, we think, the government could alone take advantage. Assuming that the location of the Lady of the Hills claim, as found by the court, was good and valid at the time it was made, and the mineral lands embraced therein were withdrawn and segregated from the public domain by such location, Gorman, though a alien, could, in our opinion, take, hold, and transfer the same to a qualified person or corporation. The government had instituted no proceedings to dispossess him, and the territory had expressly permitted him to take, hold, and transfer the qualified title vested in the miner by his location. It is not claimed that when Leary conveyed his interest in the Lady of the Hills claim to Gorman he had any actual intention of abandoning the claim, and we think such a conveyance had no more the effect of abandonment than if the claim had been conveyed by Leary to

a citizen.   Leary, being one of the owners of a valid and prop-
erly located mining claim, had an undoubted right to convey his
interest, and such conveyance, whether made to citizen or alien,
was in no sense an abandonment of the claim.   There was no
want of capacity in Leary to convey, but in Gorman to take,
that is claimed.   There being no abandonment, the only method
by which the claim could be appropriated would be by a for-
feiture of the same on the ground that the claim was granted
to the locators upon the condition subsequent that it should not
be held by an alien.   But it is well settled that conditions sub-
sequent can only be taken advantage of by the party making
the grant.   The law, applicable to such conditions subsequent
is thus stated by the supreme court of the United States in
Schulenberg v. Harriman, 21 Wall. 44:  "And it is settled law
that no one can take advantage of the non-performance of a
condition subsequent annexed to an estate in fee but the grantor
or his  heirs, or the successors of the grantor, if the grant pro-
ceed from an artificial person; and if they do not see fit to as-
sert their right to enforce a forfeiture on that ground the title
remains unimpaired in the grantee.   The authorities on this
point, with hardly an exception, are all one way from the Year
Books down.   And the same doctrine obtains where the grant
upon condition proceeds from the government; no individual
can assail the title it has conveyed on the ground that the
grantee has failed to perform the conditions annexed.   In what
manner the reserved right of the grantor for breach of the con-
dition must be asserted so as to restore the estate depends upon
the character of the grant.   If it be a private grant, that right
must be asserted by entry, or its equivalent.   If the grant be a
public one, it must be asserted by judicial proceedings author-
ized by law, the equivalent of an inquest of office at common
law, finding the tact of forfeiture, and adjudging the restora-
tion on that ground, or there must be some legislative asser-
tion of ownership of the property for breach of the condition,
such as an act directing the possession and appropriation of the
property, or that it may be offered for sale or settlement.   At
common law the sovereign could not make an entry in person,

and therefore an office found was necessary to determine the estate; but, as said by this court in a late case: 'The mode of asserting or resuming the forfeited grant is subject to the legislative authority of the government. It may be after judicial investigation, or by taking possession directly under the authority of the government without these preliminary proceedings.'" Nicoll v. Railroad Co., 12 N. Y. 121; U. S. v. Repentigny, 5 Wall, 267; Dewey v. Williams, 40 N. H. 222; Hooper v. Cummings, 45 Me. 359; Southard v. Railroad Co., 26 N. J. Law, 13.

A case in which the facts were substantially the same as in the case at bar came before the supreme court of California in Ferguson v. Neville, 61 Cal. 356. In that case the mining claim was duly located by citizens, transferred by them to aliens, who, after holding it for about a year, conveyed it to a qualified person. After such last conveyance, and while the claim was in the possession of the citizens,—the plaintiffs in that action,—the defendant's grantors made a location of the claim. That court held that the plaintiffs acquired a good title to the claim from the aliens, and in its opinion says: "The title, therefore, passed out of the United States, and was vested in Rose & Rehberg, who, being the owners thereof, had a right to make any sale or disposition of the property not inconsistent with the laws of this state. By Article 1, § 17, of the constitution in force at that time, it was provided that 'foreigners who are or who may hereafter become *bona fide* residents of this state, shall enjoy the same rights in respect to the possession, enjoyment, and inheritance of property as native-born citizens.' It is admitted in the record in the case that the grantors of plaintiffs, although Chinese, were all of them *bona fide* residents of the State of California. It is very clear, therefore, that Wing Hung and his co-grantees were capable of taking by purchase the mining ground in controversy; and their grantors, having acquired the title of the United States to such mining ground, had a full and complete right to convey the same. * * * It is not pretended there has been an 'inquest of office,' or that any steps were ever taken on behalf of the government

to seize the land, or in any manner to test the right of Wing Hung and his co-grantees to hold the same; but the case simply shows that after there was divestiture of the title of the United States by a valid location under the rules and customs of the vicinity by a locator, in accordance with the mining laws, and after an adverse possession and occupancy, long continued, and still existing at the time, the defendant's grantors attempted to acquire the title to the mining ground in controversy by a second location. We are of the opinion that they acquired no right or title by such location, and that the new trial was properly granted." This case was commented on by the same court, and the law as there laid down approved, in the subsequent case of Lee Doon v. Tesh, 68 Cal. 43, 6 Pac. Rep. 97, and 8 Pac. Rep. 621. The respondents rely with much confidence upon the decisions made in the cases of Chapman v. Toy·Long, 4 Sawy. 28, and Tibbitts v. Ah Tong, 4 Mont. 536, 2 Pac. Rep. 759. The decision in the former case was made by Judge DEADY on a motion for a provisional injunction, and seems to have been based largely upon a section of the constitution of Oregon, which provided that "No Chinaman, not a resident of the state at the adoption of the constitution, shall ever hold any real estate or mining claim or work any mining claim therein." Section 8, Art. 15, Const. Or. In the latter case the decision was made by a divided court, and the law as laid down in the opinion of the dissenting judge more nearly expresses the views entertained by this court, as applicable to the questions involved in this case. We are of the opinion, therefore, that the second conclusion of law, as stated by the learned court below,—that the conveyance by Leary to Gorman, an alien, was in effect an absolute abandonment and forfeiture of the Lady of the Hills claim,—was erroneous; and, as the judgment rendered in favor of the defendants seems to have been based mainly upon this conclusion of law, the judgment must be reversed, and a new trial granted; and it is so granted; and it is so ordered. All the judges concurring.