LOHMANN et al. v. HELMER et al.

(Circuit Court, D. Oregon. October 9, 1900.)

No. 2,627.

1. MINING CLAIMS—RIGHT OF ALIEN TO INHERIT.
    The right of an alien to inherit a mining claim located upon govern-
    ment land, as against every person but the United States, is determined
    by the laws of the state in which the claim is located.

2. SAME—DESCENT AS REAL ESTATE—OREGON STATUTE.
    Laws Or. 1899, p. 62, providing that all mining claims shall be real
    estate, and the owner of the possessory right shall have a legal estate
    therein, applies to a mining claim which, at the time of the passage of
    the act, was property of the estate of a decedent; and such claim, not
    being held or required for any purpose of administration, passed at once
    by inheritance to the heirs as real estate, and they became entitled to
    maintain a suit, in any court of competent jurisdiction, to set aside an
    alleged collusive and fraudulent conveyance of the claim by the admin-
    istrator.

In Equity.   On demurrer to bill.

Davis, Gantenbein & Veazie, for complainants.
J. C. Moreland, for defendants.

BELLINGER, District Judge.   The complainants bring this suit,
as the heirs at law of Hermanne Lohmann, to set aside conveyances
made of certain mining property belonging to said Hermanne Loh-
mann at the time of his death, situated in Grant county, Or., by Fred
Yorgensen, as administrator of said Hermanne Lohmann's estate,
to the other defendants, and for an accounting.   It is alleged that
Hermanne Lohmann died in Canyon City, Grant county, on the 18th
day of March, 1896; that at the time of his death he was possessed
of, and entitled to, two mining claims, described in the complaint;
that upon his death Yorgensen was appointed administrator of his
estate, and ever since has been, and now is, the duly qualified and
acting administrator of such estate; that about the 1st of November,
1898, Yorgensen and the defendants Helmer and Hines conspired
together to cheat, wrong, and defraud the complainants of their
right in said mining property, and to obtain possession of the same
for their own private use and benefit; that, in pursuance of such con-
spiracy, Yorgensen, on or about said date, made a pretended sale of
said mining properties to the defendant Helmer, and delivered to
said Helmer a pretended deed of conveyance of said mining property.
It is alleged that no petition for the sale of the said mining property
was ever presented to the county court of Grant county, where such
estate was being administered, and that no showing was ever made
by the said administrator that it was necessary to sell such prop-
erty, or any part of it, for the purpose of paying funeral charges, ex-
penses of administration, or claims against the estate, or for distribu-
tion, and no order by the county court was ever made authorizing
the sale of such properties; that since such sale the defendants
Helmer and Hines have been in possession of the property and mining
claims, and are engaged in working the same and taking ore there-

from; that they have taken and removed from such mines a large amount of ore, and appropriated the gold taken therefrom to their own use, the amount of which the complainants have no means of knowing, but they allege, on information and belief, that it is of the value of not less than $10,000; that the defendants Helmer and Hines have posted and filed notices of location of the said mining claims in their own names, since coming into possession thereof, and are endeavoring by means of their possession to acquire title adverse to the complainants as heirs of the said Hermanne Lohmann; that the defendant Yorgensen, administrator as aforesaid, is acting in collusion with the defendants Helmer and Hines, against the rights of the complainants, and they are now endeavoring to sell such mining property; whereby the rights of the complainants will become wholly lost. The complainants are subjects of the empire of Germany.

To this complaint the defendants demur, and the following questions are presented:. (1) The complainants being aliens and citizens of Germany, have they a right of possession of these claims? (2) If the complainants have such right of possession, has not the county court of Grant county exclusive jurisdiction in the premises? (3) Does it appear from the allegations in the bill that the sale to Helmer and Hines is not a valid sale?

Section 2319 of the Revised Statutes provides that:

"All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

The contention of the defendants is that under this statute, in order to maintain an action for the right of possession to mining claims, the complaint must show that the complainants are citizens of the United States, or have declared their intention to become such. The case principally relied upon is that of Lee Doon v. Tesh (Cal.) 8 Pac. 621. In that case the defendants had applied to the United States land office for a patent to a placer mine. The plaintiffs, who claimed to own adversely, filed a protest and adverse claim in the land office, claiming a part of the land applied for. Thereupon the register and receiver stayed proceedings in the land office, and suit was thereafter brought, under section 2326 of the Revised Statutes, to determine the question of the right of possession to the disputed ground. Section 2326 provides for such a stay "until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived"; and it provides that:

"It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim. After such judgment shall have been rendered, the party entitled to the possession of the claim, or any portion thereof, may, without giving further notice, file a certified copy of the judgment roll with the register of the land office, together with the certificate of the surveyor-gen-

eral, * * * and a patent shall issue thereon for the claim, or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess."

The case of Lee Doon v. Tesh was therefore brought for the purpose of obtaining a patent. The suit was a means of determining the contest instituted in the land department, and the court held that in such a case the complaint must show in the plaintiffs qualifications necessary to entitle them to purchase, including an allegation that the plaintiffs are citizens of the United States, or have declared their intention to become such. The court says:

"We must not be understood as holding that in all actions in relation to mining claims it is necessary for plaintiffs to aver citizenship. We are discussing the requirements of a complaint in the special case provided by the act of congress to determine the right of possession of a mining claim, under the laws of congress, in which the successful party becomes entitled on the judgment roll to. apply for a patent,—a case in which the parties must connect themselves with the title of the government. and show compliance with the acts of congress,—and our conclusions are limited to such action."

The court distinguishes that case from the case of Ferguson v. Neville, 61 Cal. 356, in which it is held that an alien may purchase land or take it by devise, and his claim will be good against every person but the state. That case was a case where a location of mining land was made by citizens of the United States, who went into the possession and occupancy thereof, and whose rights passed by mesne conveyances to Wing Hung and others, aliens and natives of China, who thereafter conveyed to the plaintiff, Ferguson, who brought his action to quiet title to the mining ground. The court says:

"It is very clear, therefore, that Wing Hung and his co-grantees were capable of taking by purchase the mining ground in controversy, and their grantors, having acquired the title of the United States to such mining ground, had a full and complete right to convey the same. But [the court goes on to say] we might concede that Wing Hung and his associates had no right to take and hold the fee by purchase, and the result, so far as the present decision is concerned, would be the same. They could take and hold until 'office found.' "

And the opinion quotes from Kent's Commentaries, to the effect that "though an alien may purchase land, or take it by demise, yet he is exposed to the danger of being devested of the fee, and of having his lands forfeited to the state, upon an inquest of office found. His title will be good against every person but the state."

The defendants also rely upon the case of Tibbitts v. Ah Tong (decided in the supreme court of Montana) 2 Pac. 759, where it is held that:

"The right to locate and the right to possess a mining claim go together. They are part of the same grant, and neither can exist without the other. If, therefore, the grant by assignment or conveyance falls upon an alien, incapable of making a location, his possession is of no consequence; the possession being transferred to one who, under the statutes. is incapable of becoming a purchaser from the government. Such possession, being part and parcel of the purchase, is illegal, and is equivalent to an abandonment, and opens the ground to location and possession by any qualified person. The alien cannot become the government's grantee, and cannot become so in a roundabout way, by being the grantee of the government's grantee."

The case of Chapman v. Toy Long, 4 Sawy. 28, Fed. Cas. No. 2,610, is to the same effect, and is cited, and relied upon as an authority, in

the case last referred to. On the other hand, it is held in Billings v. Smelting Co., by the circuit court of appeals for the Eighth circuit (2 C. C. A. 252, 51 Fed. 338), that an alien who has expended time, money, and labor in exploring for and locating a mining claim on public lands, conjointly with others, may hold his interest, or recover the same if deprived thereof, as against his co-locators, and as against all the world except the United States, though section 2319 of the Revised Statutes confines the right of exploration, purchase, and occupation to citizens of the United States, or persons who have declared their intention to become such. Upon a petition for rehearing, the court distinguishes the case on trial from those cases where the proceeding is brought for the purpose of procuring title from the United States. The court says:

"There can be no question, under the provisions of section 2319 of the Revised Statutes, that, when application is made for the issuance of evidence of title to mining property, it is necessary to show that the applicant is a citizen of the United States, or has declared his intention to become such, before a conveyance of title can be properly issued; and therefore, as was held by the supreme court in the case just cited (O'Reilly v. Campbell, 116 U. S. 418, 6 Sup. Ct. 421, 29 L. Ed. 669), if a party is seeking to procure the title to mining property from the United States, if taken at the proper time, the objection of alienage would prevent the acquirement of title, and such objection may be made by any one adversely interested. In such cases the sovereign is a party in fact to the proceeding, which is a direct one, for the procurement of title: and the objection of alienage, no matter by whom suggested, is based solely upon the right of the government to interpose the fact of alienage as a bar to procuring or holding an interest in realty."

The pith of the matter is in the statement that, when the case is brought in support of an application in the land department for the issuance of evidence of title to mining property, the sovereign is in fact a party to the proceeding, which is a direct one, for the procurement of title, and the question of the alienage is therefore necessarily presented, and the necessary qualification prescribed by the statute to entitle the party to hold must appear. It is, in effect, as was the case of Lee Doon v. Tesh, a proceeding against the government to acquire title, the suit being to obtain a judgment upon which the plaintiff is entitled to his patent from the land office, as a conclusive determination of his right thereto.

This question is decided in the case of Manuel v. Wulff, 152 U. S. 510, 14 Sup. Ct. 653, 38 L. Ed. 564, where the court, among other things, says:

"The objection here rests, however, on the assumption that congress has not intended to confer any estate in respect of claims of this character because the right of purchase and the right of possession are indivisible, and the validity of the location is destroyed on the transfer of the claim to a person not authorized to keep the location alive. Tibbitts v. Ah Tong, 4 Mont. 536, 2 Pac. 759. Of course, the same qualification required in those who may purchase is required as to those who may possess, but that, in our judgment, does not render possessory rights any the less property susceptible of distinct ownership, nor involve the consequence that their transfer to unqualified persons would operate a forfeiture eo instanti as for a violation of a continuing condition precedent, so that the removal of the disqualification would not cure the defect. If it could be properly held that the qualification of his grantee should be regarded as at all a condition annexed to the ownership of the

qualified locator, such condition would be a condition subsequent, and governed by the rule laid down in Schulenberg v. Harriman, 21 Wall. 44, 22 L. Ed. 551."

In the light of these cases, the question of the right of an alien to inherit a mining claim located upon government land is, as against every person but the United States, determined by the laws of the state in which the mine is located, and under the laws of this state an alien may inherit such property.

It is argued, however, that, this property being personal property at the time Yorgensen was appointed administrator, it must remain subject to administration in the state probate court. In 1899 the legislature of this state passed an act providing that "all mining claims, whether quartz or placer, shall be real estate, and the owner of the possessory right thereto shall have a legal estate therein within the meaning of section 316 of Hill's Code." Laws 1899, p. 62. Upon the passage of this act, if not before, the property in question passed by inheritance, as real property, to the complainants, unless it had been previously disposed of by the administrator. Upon the facts alleged, there had been a pretended sale of the property as personalty, but the sale was void under the statute, and the administrator had long ceased to hold the property in his representative capacity, if he had ever so held it. Since the passage of the act of 1899 making mining claims real property, this property has had that character, and the title has necessarily vested in the heirs. The assertion of that title, as in all cases where real property is involved, is not inconsistent with the right of the administrator to sell the property, upon the order of the county court, to pay funeral charges, expenses of administration, or claims against the estate, if there should be any necessity therefor. So long as it is not held or claimed by the administrator for any purpose of administration, it is not within the jurisdiction of the court of probate.

It is not necessary, upon the demurrer, to determine whether it is competent for this court to order an accounting as to the gold taken from the mine since the pretended sale. It is within the jurisdiction of the court to grant the other relief prayed for, and, if the complainants ask too much, their complaint is not demurrable on that account.